IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ROCHELLE N. KAWELO,<br><br>          Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>          Defendant. | CIVIL NO. CV 15-223 DKW-KSC<br><br>**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE** |

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

## INTRODUCTION

Plaintiff Rochelle Kawelo brings this action under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security, Carolyn C. Colvin (the "Commissioner"), which denied Kawelo's application for disability insurance benefits based upon the finding that she was not disabled.   At issue is whether the Administrative Law Judge ("ALJ") was required to reconcile any conflicts between vocational expert testimony and the Dictionary of Occupational Titles ("DOT"); whether the ALJ correctly classified Kawelo's past work; and whether the ALJ properly weighed the medical opinion of the consultative psychological examiner, Dennis Donovan, Ph.D.   After carefully reviewing the record, the Court concludes that the ALJ correctly determined that Kawelo was not disabled at Step 4 of the

five-step sequential evaluation process.   Because the ALJ's decision was supported

by substantial evidence and was not legally erroneous, the Court affirms the ALJ's

January 23, 2014 decision.

## BACKGROUND

Kawelo worked for 39 years at First Hawaiian Bank, until she retired for

health reasons in 2008.   Administrative Record ("AR") 42, 47.   During her

employment with the bank, she worked as a bookkeeper, teller, customer service

representative and loan officer.   AR 42.   She claims that her job increased in

difficulty due to changes in procedures after September 11, 2001, and then

magnified following a stroke she suffered in 2004.   AR 44-47.   According to

Kawelo, her memory was impaired after her stroke, which made "learning the new

federal guidelines and compliance standards, meeting datelines and things of that

nature . . . much more stressful."   Opening Br. at 6.   After leaving her job at the

bank, she applied for a bookkeeping position at Zippy's Restaurant, but did not get

the job.   AR 44.   Thereafter, she did bookkeeping work for her husband's business

for ten hours per week until sometime in 2011, when that work also became too

stressful for her.   AR 44-45, 56.

Kawelo filed for benefits on January 23, 2012.   She was referred to the

consulting psychological examiner, Dr. Donovan, for evaluation on August 3, 2012.

AR 382-87.   Her claim was initially denied on August 6, 2012, and subsequently

denied upon reconsideration on June 19, 2013.   AR 25.   Kawelo requested a

hearing, which the ALJ convened via video conference on December 2, 2013.   AR

20, 25.   Participating at the hearing were Kawelo and her attorney, and Vocational

Expert ("VE") Thomas Sartoris.   AR 25.

At the hearing, the ALJ questioned the VE and Kawelo regarding her past

work.   The ALJ first requested the VE to classify Kawelo's past work at the bank:

> ALJ:  All right, Mr. Sartoris, the only past work – actually, let
> me ask you a question.   My question, before we – the only past
> work that I see – I'm going to ask you to classify the past work,
> and then I'm going to ask you a question about the bookkeeping
> that the, that the claimant performed.   So the past work as a – in
> the bank – for the bank, could you classify that for us?
>
> VE:    Yes.   I, I do have a question.   Did – I, I thought I heard
> her say she did bookkeeping tasks for the bank as well.
>
> ALJ:  That's correct.
>
> CLAIMANT:        Yes.
>
> ALJ:  That's what I have.   Yep.
>
> VE:    Okay.   So, I have three different positions that I'll use for
> the overall work at the bank.   One would be a customer service
> representative for financial institutions, <u>DOT</u> code 205.362-026,
> that's at an SVP: 6, exertional level classified as light.   Second
> position is loan officer, <u>DOT</u> code 241.367-018, that's at an
> SVP: 6, exertional level sedentary.   And then the third position
> would be bookkeeper, <u>DOT</u> code 21[0]-.382014, that is as, as –

> let me start over.   That is at an SVP: 6, exertional level
> sedentary.

AR 55-56.   The ALJ then questioned the VE about the job duties of these three

positions and presented him with hypothetical scenarios:

> ALJ:  . . . I'm going to ask you to assume an individual the
> claimant's age, education, and past work who's able to lift and
> carry 10 pounds frequently, 20 pounds, occasionally; can sit for
> six hours in an eight-hour day, stand/walk for six hours in an
> eight-hour day; can never climb ladders, ropes, scaffolds; can
> occasionally climb ramps and stairs, balance, stoop, kneel,
> crouch, crawl; can perform frequent gross and fine activities with
> the left upper extremity; and should avoid heights and other
> hazards.   Is such an individual able to perform the claimant's
> past work?
>
> VE:   Yes, Your Honor.   Let me ask you the last environmental
> – avoid heights and what was the other?
>
> ALJ:  Other hazards, such as machinery?
>
> VE:   Oh, okay.
>
> ALJ:  Now, I'm going to, I'm going to add to the hypothetical
> that the individual would need a cane to walk.   So, my question
> is, with this additional limitation, can such an individual perform
> the claimant's past work?
>
> VE:   Okay.   The only reason I'm hesitating is that – is the, the
> definitions of the job duties would not interfere with the person
> using a cane.   Knowing what I know about banks, and I'm
> varying from the <u>DOT</u>, I don't know if she had to lift and carry
> any bags of coins or things where she would be using one arm to
> carry and using the cane in the other upper extremity.   That, that
> wouldn't impact documents and things of that nature, but it may

4

impact, again, if she were lifting boxes of coins, or bags of coins, or something like that.

. . . .

ALJ:  Let me ask you, Ms. Kawelo, when you were the customer service rep for the bank, did you have to do any lifting of the type that Mr. Sartoris is talking about?

CLAIMANT:       Yes, I did.   There was times where I was also a, a second party for dual control to go into the vault, and we had to lift bag of coins [sic], and I was also – I also had access to safe – to opening safety deposit boxes for customers, and many of them is elderly [sic], and we used to have to lift the boxes for them[.]

AR 57-58.

The ALJ then queried Kawelo about when she performed each of her

positions at the bank as a customer service representative, loan officer, and

bookkeeper.   Kawelo's responses appeared to show some overlap in her

responsibilities:

ALJ:  When you did the job of loan officer, did you also have to access the – was this – did you have to lift that weight or carry those things?

CLAIMANT:       You know, when I was a CSR and a loan officer at the same time, I would say yes, because there was many times where I would have been interrupted, or if I didn't have a customer and I would have to assist the supervisor to go to the vault to get cash money or coins for the tellers.   There was many a times that I had to do that job as well.

5

ALJ:  When you – did you say –

CLAIMANT:      But, you see, I'm working out in the branches, so the branches are a lot smaller than working at a huge bank where they have people doing all those different jobs.

. . . .

ALJ:   – when you – did you was it ever that you did – now – that you did just the job of loan officer? That was it?

CLAIMANT:      Say that again? I didn't understand.

ALJ:  Was there ever a circumstance when you did just the job of loan officer?   It sounds like what you're saying is that you did, like, a combination of all these duties.

CLAIMANT:      Exactly.   I did.   As a loan –

ALJ:  And –

CLAIMANT:      – officer, yes, there was a time where I could just be able to sit at my desk, take in loan applications, speak with the customers, and do what I needed to do for a loan.   Yes.

ALJ:  Now, how long did you do that, where that was all you did, which is loan officer job?

CLAIMANT:      Well, it came with the job title.   With the CSR, we – you know, the bank – like I said, the bank had changed, so being a CSR, we had to do both.   We had to [do] loan applications, be a loan officer, as well as be a CSR and open bank accounts for customers.   We had to do it all.   It wasn't just –

ALJ:  Was there –

CLAIMANT:        – specifically just a loan officer and a CSR. We had to do it – it was part of my job to do it all.

ALJ:  Okay.   So, there was – it sounds like there was never a time – I mean, there, there may have been, there may have been a day or a couple of days in a row, where all you did was loan officer.

CLAIMANT:        Right.

ALJ:  But –

CLAIMANT:        Exactly.

ALJ:  – you – at, at any time, you could be called upon to do –

CLAIMANT:        Right.

ALJ:  – the customer service work as well.   Is that –

CLAIMANT:        Exactly.

ALJ:  – right?

CLAIMANT:        Correct.

ALJ:  What about bookkeeper?   Did you – was there a time when that's all you did was the bookkeeping job?

CLAIMANT:        Well, when I worked as a bookkeeper – when I first started with the bank, I was a bookkeeper as well, and that was really different, because you're on the operational side, and that, that involved a lot of paperwork and balancing of GL accounts, and balancing on the accounting side.   And as a bookkeeper as well, sometimes, if you had the mini-vault in the back of your area where you're at, sometimes, as a bookkeeper,

they also have to act as a dual control to the supervisor for that mini-vault.

ALJ:  Did you – but there was a time, it sounds like, where you were just, you were just doing bookkeeping?

CLAIMANT:       Yes.

ALJ:  When you first started.

CLAIMANT:       When I was working for my husband and helping him on his – with his company, I just strictly did bookkeeping.   Yes.

ALJ:  But at the bank as well, you just strictly did bookkeeping?

CLAIMANT:       Did bookkeeping, yes.

ALJ:  So, how long did you just do the bookkeeping before you started moving into the other areas?

CLAIMANT:       Oh, gosh.   I can't quite remember.   Maybe a year or two at the most.   It could have been longer.   I'm not sure.

AR 59-62.   The ALJ then returned to questioning the VE regarding whether an

individual could perform Kawelo's past work as she performed it if a cane was

necessary in order to walk.

VE:   I have to get a little bit more clarification, Your Honor. So, she could do the job duties of the loan officer, she could do the job duties of the bookkeeper.   Whether or not she could do all of the job duties of the customer service rep that involved going into the vault, getting safety deposit boxes, and then transferring of the coins, would depend on how much those items

weighed, number one; and number two, could she lift and carry those items with one upper extremity and use the cane in the other.

ALJ:  Let me ask you, could the individual perform the jobs of bookkeeper and loan officer as those jobs are provided or described in the <u>DOT</u>?

VE:    Yes.   And I'm, I'm answering yes for the institution as well as other employers.
 . . . .
So, she could perform those job duties within the bank setting, but she could also – those jobs have transferrable skills and are transferable to other employers.

ALJ:  Yeah.   Okay.

VE:    Yeah, the, the only question I can't answer is, is the, the transporting of material at, at the bank where she worked in those job duties, depending, again, upon the weight of those items and whether or not she could carry them with the free upper extremity.

ALJ:  Yeah, okay.   All right.   And let me ask you, if the individual is limited to – now, I have her limited – the individual limited to light work.   If I change the hypothetical, the individual is limited to sedentary work, everything else remains the same, including the need for a cane to walk, could the individual perform the claimant's past work as performed in the general economy?

VE:    The two positions of loan officer and bookkeeper certainly would be appropriate given that hypothetical.   The customer service rep is probably, probably not.

AR 64-65.

9

Kawelo's attorney did not object to any questions asked by the ALJ and did not ask any questions of the VE at the hearing.   AR 65.

In the January 23, 2014 decision, the ALJ employed the five-step sequential disability evaluation process to determine whether Kawelo was disabled within the meaning of the Social Security Act.   *See* 20 C.F.R. § 404.1520(a)(4).[1]   After establishing that Kawelo had not engaged in substantial gainful activity since her alleged onset date of disability, August 1, 2008, the ALJ determined that coronary

---

[1]The claimant has the burden of proof for Steps 1 through 4, and the Commissioner has the burden of proof at Step 5.   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   The five steps of the inquiry are:

> 1.   Is claimant presently working in a substantially gainful activity?   If so, then the claimant is not disabled within the meaning of the Social Security Act.   If not, proceed to Step 2.   20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2.   Is the claimant's impairment severe?   If so, proceed to Step 3.   If not, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3.   Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?   If so, then the claimant is disabled.   If not, proceed to Step 4.   20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4.   Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled.   If not, proceed to Step 5.   20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5.   Is the claimant able to do any other work?   If so, then the claimant is not disabled.   If not, then the claimant is disabled.   20 C.F.R. §§ 404.1520(f), 416.920(f).

*See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

artery disease status post stenting, history of stroke with residuals, and obesity were Kawelo's severe impairments (Steps 1 and 2).   AR 27.   At Step 3, the ALJ found that Kawelo does not have an impairment or combination of impairments that meets or equals a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1.   AR 29. The ALJ, relying upon the testimony of the VE, found that Kawelo had past relevant work ("PRW") as a customer service representative for a financial institution, loan officer, and bookkeeper, and determined that Kawelo was capable of performing her PRW as a loan officer and bookkeeper as those jobs were generally performed in the national economy because the demands of the work do not exceed the residual functional capacity ("RFC").[2]   AR 33.   The ALJ also found the VE's testimony to be consistent with the information contained in the DOT.   AR 33.   The ALJ determined that Kawelo "has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision."   AR 33. Thus, the adjudication stopped at Step 4 and did not reach Step 5.

---

[2]A claimant's RFC is what he or she a can still do despite existing exertional and nonexertional limitations.   *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a) (1991)).

Kawelo filed a request for review of the ALJ's decision on February 10, 2014.

AR 20.   Thereafter, on April 14, 2015, the ALJ's decision became the

Commissioner's final decision when the Appeals Council denied Kawelo's request

for review.   AR 1-7.   Kawelo filed her complaint seeking judicial review of the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g) on June 12, 2015.

Kawelo accepts the ALJ's findings at Steps 1, 2, and 3.   On appeal, Kawelo

contends that the ALJ committed legal error by failing to inquire of the VE if he

could reconcile a purported conflict in his testimony, failing to properly classify her

past work, and improperly rejecting Dr. Donovan's medical opinion against the

substantial evidence in the record.   Kawelo asks the Court to reverse the final

decision of the ALJ that she is not disabled and remand for a new administrative

hearing.   *See* Complaint ¶¶ 13-14.

## STANDARD OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), "[t]he district

court reviews the Commissioner's final decision for substantial evidence, and the

Commissioner's decision will be disturbed only if it is not supported by substantial

evidence or is based on legal error."   *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th

Cir. 2012); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098

(9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve

12

conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).   Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Hill*, 698 F.3d at 1159 (citation omitted).

"Even though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of disability." *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) (citation omitted).   In other words, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."   *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## DISCUSSION

Kawelo raises the following issues on appeal: (1) whether the ALJ's failure to ask the VE if purported conflicts in his testimony could be reconciled is legal error; (2) whether the ALJ's failure to correctly classify Kawelo's past work is legal error; and (3) whether the ALJ's rejection of Dr. Donovan's opinion is against the substantial evidence.   The Court addresses each issue below.

## I.   The ALJ Did Not Err By Failing to Inquire Whether A Discrepancy Existed Between the VE's Testimony and the DOT

Drawing upon the VE's testimony, the ALJ determined at Step 4 that Kawelo was capable of performing her PRW as a loan officer and bookkeeper, jobs that were generally performed in the national economy.   AR 33.   She made a specific finding that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."   AR 33.

SSR 00-4p provides the following guidance regarding occupational evidence from a vocational expert in relation to information included in the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.   When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.   At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

On appeal, Kawelo argues that the ALJ failed to question the VE about conflicts between his testimony and the DOT with respect to lifting and carrying bags of coins and other heavy items.   Kawelo points to the following VE testimony as presenting a conflict "between the DOT and [Kawelo's] past work in banking":

14

VE:   Yeah, the, only question I can't answer is, is the, the transporting of material at, at the bank where she worked in those job duties, depending, again, upon the weight of those items and whether or not she could carry them with the free upper extremity.

Opening Br. at 10 (quoting AR 65).

The parties do not dispute that under SSR 00-4p, the ALJ was required to clarify any discrepancy where there is an apparent unresolved conflict that arises between the VE's testimony and the DOT.   *See Mickelson-Wurm v. Comm'r Soc. Sec. Admin.*, 285 F. App'x 482, 486 (9th Cir. 2008).   They disagree, however, regarding whether there was such a conflict.   The Court agrees with the agency that there was no discrepancy here.

There were no identified conflicts between the DOT and any testimony of the VE or Kawelo that she could perform the loan officer and bookkeeper positions as they were generally performed in the national economy.   Based upon Kawelo's testimony that she had to carry coins, safe deposit boxes, and other items during the course of her employment in the bank, it was uncertain whether her RFC allowed her to return to her PRW as a customer service representative as that occupation is described in the DOT.   AR 58, 64.   The ALJ, however, did not find that Kawelo could perform her PRW as a customer service representative, and thus, any purported issue arising from the VE's testimony about whether she could perform

her PRW as customer service representative is not germane.   AR 33.   That is, the

ALJ's failure to elicit a reasonable explanation for an apparent unresolved conflict

between the DOT and Kawelo's past work as a customer service representative is

not reversible error.

It is clear from the record that the VE's testimony in response to the ALJ's

direct questioning was that Kawelo could perform the job duties of a bookkeeper

and loan officer as those jobs were described in the DOT.   In fact, as the

Commissioner indicates, the descriptions for these positions in the DOT

demonstrate that no such conflict existed.   *See* Answering brief at 13 (citing DOT

No. 241.367-018, *available at* 1991 WL 672253; DOT No. 210.382-014, *available*

*at* 1991 WL 671821).

Moreover, Kawelo's counsel had the opportunity to question the VE about the

purported conflicts, but did not.   Nor does Kawelo argue that she is unable to

perform the cited jobs, or point to evidence contradicting the VE's testimony.   She

simply repeats her arguments that the VE identified a conflict and never determined

that she could return to her past work as a customer service representative.   These

arguments, however, do not withstand scrutiny.   To the extent Kawelo erroneously

argues that a conflict exists because her only PRW is as a customer service

representative, the Court rejects this line of reasoning as addressed more fully below.

In any event, even assuming that an apparent conflict should have appeared in the ALJ's decision with respect to the customer service representative position, but does not, the Court finds that error harmless. "[T]he Ninth Circuit has found procedural errors at this stage may be harmless if there is no conflict, or if the VE provides 'sufficient support for her conclusion so as to justify any potential conflicts.'" *Gilmour v. Colvin*, 2014 WL 3749458, at *8 (E.D. Cal. July 29, 2014) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007)); *see also Flores v. Colvin*, 546 Fed. App'x 638, 641 (9th Cir. 2013) ("[T]he ALJ's failure to follow the procedural requirements of SSR 00-4p was harmless because the VE acknowledged that his description of the opposition varied from the DOT's and he offered reasonable explanations for using a differing description."). Under the circumstances presented, the Court concludes that the ALJ did not err in relying upon the VE's testimony and committed no legal error where no apparent discrepancy existed between his testimony and the DOT.

## II.   The ALJ Did Not Err In Identifying Kawelo's Prior Relevant Work

The second point of error raised by Kawelo is that the ALJ erred in determining that her PRW was as a loan officer and bookkeeper, rather than as a

17

customer service representative. In the January 23, 2014 decision, the ALJ

determined that Kawelo was capable of performing the duties of a loan officer and

bookkeeper, which would not require the work-related activities precluded by her

RFC, and explained as follows:

> The vocational expert testified that the claimant has past work as
> a customer service representative for a financial institution (DOT
> 205.362-026, Light, SVP 6), loan officer (DOT 241.367-018,
> Sedentary, SVP 6) and bookkeeper (DOT 21[0].382-014,
> Sedentary, SVP 6). These jobs meet the criteria for past
> relevant work because they were performed within the last 15
> years, the work lasted long enough for the claimant to learn to do
> the job and her earnings from these jobs were at levels of
> substantial gainful activity (Exs. 4D; 3E; Claimant Testimony).
> The vocational expert said the claimant could perform her past
> work as a loan officer and bookkeeper as generally performed in
> the national economy because the demands of the work do not
> exceed the residual functional capacity.

AR 33.

At Step 4 of the sequential analysis, the claimant has the burden to prove that

she cannot perform her PRW "either as actually performed or as generally

performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th

Cir. 2002). Generally, past work is PRW if: (1) it was substantial gainful activity;

(2) the claimant performed the job long enough to gain the skills required for

average performance of this job; and (3) the work was performed within the last

fifteen years. *See* 20 C.F.R. § 404.1565(a); Social Security Ruling (SSR) 82-62,

*available at* 1982 WL 31386, at *2.   A claimant will be found not disabled if she has the RFC to perform her PRW.   20 C.F.R. § 404.1560(b)(3).   Kawelo does not dispute the ALJ's finding that she had the RFC to perform work as a loan officer and bookkeeper.

In this instance, the record is clear from Kawelo's own testimony that she did work as a loan officer and as a bookkeeper while employed at the bank.   AR 59; *see also* AR 42-43 ("I've been with the bank for 39 years, and I think I did it all, from bookkeeping, up to being a teller, up to being a CSR, and up to being a loan officer.").   Kawelo testified that:

> ALJ:  Was there ever a circumstance when you did just the job of loan officer?   It sounds like what you're saying is that you did, like, a combination of all these duties.
>
> CLAIMANT:        Exactly.   I did.   As a loan –
>
> ALJ:  And –
>
> CLAIMANT:        – officer, yes, there was a time where I could just be able to sit at my desk, take in loan applications, speak with the customers, and do what I needed to do for a loan.   Yes.
>
> ALJ:  Now, how long did you do that, where that was all you did, which is loan officer job?
>
> CLAIMANT:        Well, it came with the job title.   With the CSR, we – you know, the bank – like I said, the bank had changed, so being a CSR, we had to do both.   We had to [do] loan applications, be a loan officer, as well as be a CSR and open

bank accounts for customers.   We had to do it all.   It wasn't just –

ALJ:  Was there –

CLAIMANT:       – specifically just a loan officer and a CSR. We had to do it – it was part of my job to do it all.

ALJ:  Okay.   So, there was – it sounds like there was never a time – I mean, there, there may have been, there may have been a day or a couple of days in a row, where all you did was loan officer.

CLAIMANT:       Right.

. . . .

ALJ:  What about bookkeeper?   Did you – was there a time when that's all you did was the bookkeeping job?

CLAIMANT:       Well, when I worked as a bookkeeper – when I first started with the bank, I was a bookkeeper as well, and that was really different, because you're on the operational side, and that, that involved a lot of paperwork and balancing of GL accounts, and balancing on the accounting side. . . .

ALJ:  Did you – but there was a time, it sounds like, where you were just, you were just doing bookkeeping?

CLAIMANT:       Yes.

. . . .

ALJ:  But at the bank as well, you just strictly did bookkeeping?

CLAIMANT:       Did bookkeeping, yes.

> ALJ:  So, how long did you just do the booking before you started moving into the other areas?
>
> CLAIMANT:     Oh, gosh.   I can't quite remember.   Maybe a year or two at the most.   It could have been longer.   I'm not sure.

AR 59-62.   Thus, the ALJ rationally concluded that Kawelo had PRW as a loan officer and bookkeeper, based upon Kawelo's own testimony that she did, in fact, perform these job duties at the bank.   *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (concluding that the claimant's testimony about his past relevant work was "highly probative"); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41."); SSR 82–62 ("the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work").

Kawelo contends that her PRW cannot be reclassified from the one job she purportedly performed – customer service representative – into multiple jobs, thereby labeling all of these jobs "past work," and finding that she can return to her

past work because she can perform some, but not all of these jobs.   *See* Opening Br.

at 11-12 (citing *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985)).   Kawelo's

reliance on *Valencia*, however, is misplaced.   *Valencia* is distinguishable because

the Ninth Circuit's holding there is that where a job encompasses more than one

DOT code, it is error for the ALJ to classify it "according to the least demanding

function."   751 F.2d at 1086.   That is, in *Valencia*, the ALJ based the

determination on a single function in an overall more taxing job.   Not so here.

The Court concludes that, to the extent Kawelo now argues that her job duties

as a loan officer were merely part of her job as a customer service representative, she

has not met her burden at Step 4.   Kawelo, represented by counsel at the hearing,

did not question or otherwise object to the VE's testimony based upon the DOT's

classification of her PRW as three different positions.   Consequently, the ALJ,

relying on the unrefuted testimony of Kawelo and the VE, rationally found that

Kawelo performed three separate jobs while employed at the bank.[3]   *See, e.g.,*

---

[3]To the extent the agency contends that Kawelo waived the argument below that the ALJ and VE wrongly characterized her PRW, the Court does not find waiver appropriate under the circumstances presented here.   Although the Commissioner is correct that Kawelo was represented by counsel at the hearing below (albeit not her current appellate counsel), and her attorney failed to ask any questions in response the VE's testimony, Kawelo does not seek to introduce new evidence for the first time on appeal.   *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, at least when claimants are represented by counsel, they must raise all evidence at their administrative hearings in order to preserve the issues on appeal, unless

*Minton v. Colvin*, 2013 WL 5496192, at *3 (N.D. Cal. Oct. 3, 2013) (Upholding

ALJ's determination regarding past work classification where VE considered two

occupations performed "at the same location" and "each constitutes its own separate

occupation under the DOT, and the vocational expert treated them as such."); *Rivera*

*v. Astrue*, 2010 WL 491624, at *4-5 (C.D. Cal. 2010) (Affirming ALJ decision

where VE testified that the DOT classifies two jobs as independent occupations, and

finding no error where the ALJ determined the claimant had past work at separate

occupations, not just separate tasks in one job.).

Moreover, the ALJ rationally classified Kawelo's past work as a customer

service representative and loan officer as two distinct occupations, based upon the

DOT classification, the VE's testimony and Kawelo's own testimony, even though

Kawelo may have performed those positions concurrently at some point in time.

*See Person v. Astrue*, 2011 WL 488668, at *5 (C.D. Cal. Feb. 10, 2011) (Finding no

error where ALJ did not segregate particular tasks of a job to classify past relevant

work, but instead "selected the most representative occupation among various

occupations as to all of the tasks performed.").

---

manifest injustice would result); *Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *12 (D. Or. Aug. 18, 2014) (finding *Meanel* distinguishable where the "issue presented is one of law and the pertinent record has been fully developed," and alternatively, exercising discretion to reach the merits of the claimant's argument).   In any event, the Court, in its discretion, reaches the merits of Kawelo's arguments on appeal.

To the extent Kawelo infers that her PRW was a "composite" job, the contention is likewise without merit.   *See* Opening Br. at 12.   A composite job is "a position comprised of several separate positions listed in the Dictionary of Occupational Titles."   *Lingenfelter v. Colvin*, 2015 WL 2194310, at *6 (D. Nev. May 11, 2015).   Here, the VE did not testify that Kawelo's past work at the bank constituted a composite job.   His testimony is unrebutted.   The ALJ properly found, based on all the testimony, that Kawelo had past work in three distinct positions with separate DOT classifications.[4]   In any event, even if Kawelo's contrary interpretation of her testimony was somehow plausible – that she did not perform the job duties of a loan officer – the Court's conclusion remains the same. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

_____

[4]The district court in *Lingenfelter* explains the ALJ's PRW analysis of composite jobs as follows:

> Under the Agency's pertinent interpretive guidance, the ALJ is not to utilize the DOT to conclude a plaintiff can perform a past relevant composite job, since those jobs are, given their specialized nature, not "generally performed" as contemplated by the applicable rules and regulations.   ALJs are to "find the claimant capable of performing the composite job [at step four] only if he or she can perform all parts of the job.   A composite job will not have a DOT counterpart, so [ALJs shall] not evaluate [the job] at the part of step 4 consider work 'as generally performed in the national economy.'"   Social Security Administration, Program Operations Manual System DI § 25005.020(B); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006 ("The POMS does not have the force of law, but it is persuasive authority.").

*Lingenfelter v. Colvin*, 2015 WL 2194310, at *6 (D. Nev. May 11, 2015).

24

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Kawelo also argues that her work as a bookkeeper with the bank should not have been included as PRW because she did not perform it within the past fifteen years, as required by 20 C.F.R. § 404.1560(b)(1).   The ALJ stated during the hearing that Kawelo's time spent working as a bookkeeper for her husband's business through 2011 should not be classified as past work.   AR 57.   Kawelo testified that she did exclusively bookkeeping tasks when she was first hired at the bank "over 40 years ago," AR 62, and also during the course of her other work as a customer service representative, and it was considered as such by the VE.   AR 62, 64.   Although Kawelo's testimony was that she worked as a bookkeeper *exclusively* when she was first hired at the bank over forty years ago, the agency's regulations do not preclude the ALJ from considering relevant past work experience outside of this time frame.   *See Trundle v. Comm'r of Soc. Sec. Admin*., 484 F. App'x 94, 96 (9th Cir. 2012) (Agency "regulation does not preclude considering past work experience older than fifteen years.   Rather, fifteen years is the time frame that the agency 'usually consider[s].'   The regulation also states that where an applicant has 'acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now

25

do.'") (citing 20 C.F.R. § 404.1565(a)); *Gopez v. Colvin*, 2015 WL 1926284, at *5 (C.D. Cal. Apr. 28, 2015) (Noting that "the 15-year period is not an 'unflinching rule," because the "15-year *guide* is intended to insure that remote work experience is not currently applied." . . . . "Plaintiff's own description of her job responsibilities—assisting customers with deposits and withdrawals, opening new accounts, and counting money—underscores the continued relevancy of her work experience.") (citing 20 C.F.R. § 416.965(a)). This is especially so where Kawelo continued to work as a bookkeeper for her husband after she left the job at the bank and applied for a bookkeeping position at Zippy's, and underscores the continued relevancy of her prior work experience. *See* AR 42-44.

Finally, even assuming that the ALJ erred in finding that Kawelo had past work as bookkeeper, the rational finding that she had past work as a loan officer is sufficient to uphold the ALJ's decision under the harmless error standard. *See Lind v. Astrue*, 370 F. App'x 814, 817 (9th Cir. 2010) ("Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that Lind could perform her past relevant work as a customer service representative, and the ability to perform one of her past jobs is sufficient to meet the standard."); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 434 (9th Cir. 1988) (per curiam) (Holding that ALJ's error in classifying past relevant work

26

as "light" was inconsequential where the record supported the ALJ's determination that the claimant was able to perform other light work and therefore was not disabled.).

Substantial evidence supported the ALJ's finding that Kawelo's prior work experience qualified her to perform the duties of a loan officer and a bookkeeper. Accordingly, the ALJ did not err in classifying Kawelo's PRW, and Kawelo has not met her burden at Step 4 that she could not perform her past work.

## III.   **The ALJ Properly Weighed the Consultative Examiner's Opinion**

Kawelo's final contention is that the ALJ improperly rejected Dr. Donovan's medical findings of mental limitations and instead gave undue weight to the opinion of Tawnya Brode, Psy. D., a non-examining medical consultant who reviewed Kawelo's file.   The Commissioner argues that the ALJ correctly afforded little weight to Dr. Donovan's opinion that Kawelo had significant limitations in her ability to sustain basic mental work activities.   The Court affirms the ALJ's findings on this issue.

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.   *See Regennitter v. Comm'r of Social Sec. Admin*., 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Reddick v.*

*Chater*, 157 F.3d 715, 725 (9th Cir. 1988).   Generally, the opinion of a

non-examining medical source is given less weight than the opinion of a treating or

examining doctor.   *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995); *see also*

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("Generally, the opinions of

examining physicians are afforded more weight than those of non-examining

physicians, and the opinions of examining non-treating physicians are afforded less

weight than those of treating physicians.   20 C.F.R. § 404.1527(d)(1)-(2).

Additional factors relevant to evaluating any medical opinion, not limited to the

opinion of the treating physician, include the amount of relevant evidence that

supports the opinion and the quality of the explanation provided; the consistency of

the medical opinion with the record as a whole; the specialty of the physician

providing the opinion; and '[o]ther factors' such as the degree of understanding a

physician has of the Administration's 'disability programs and their evidentiary

requirements' and the degree of his or her familiarity with other information in the

case record.   *Id*. § 404.1527(d)(3)-(6).").   The Court notes that neither Dr.

Donovan nor Dr. Brode was Kawelo's treating physician.

Dr. Donovan reviewed records provided by the Social Security

Administration and conducted a psychological examination on August 3, 2012.

AR 382.   In his report, he noted that Kawelo suffers from heart disease, diabetes,

complications from stroke, walks with the aid of a cane, and that "from her self-report, she walks more slowly now than she does normally."   AR 382.   Dr. Donovan also noted the following self-reported social and health history:

> Rochelle indicated that she suffered a stroke in 2004.   She reports it was a right-sided stroke, which affected her left side motor abilities.   She indicated that her speech and language were not affected and that her motor abilities returned and she made a good recovery from the stroke and went back to work. She indicates that in 2008, she was experiencing heartburn and was actually experiencing arterial blockage.   She had surgery, having three stents put in, and she decided to retire at that time, thinking that she might not be able to handle the stress of work.

> Rochelle believes she cannot work now, as she cannot handle the stress of work.   She did look for work in 2012, at the recommendation of a therapist she was seeing at Kaiser. . . .

> Rochelle indicates that since then, she has suffered more physical complications, having some motor difficulties with her left leg, a slight drool, and right hand shakiness.   She indicates she is seeing a doctor for this, takes medication, but these symptoms persist.

> . . . .

> Rochelle did see a psychologist in 2011 and the beginning part of 2012.   This was at Kaiser.   She was not prescribed medication. . . . It was this psychologist who had recommended to her that she look for work.

> . . . .

Yet, her responses do not indicate disabling problems with concentration, energy, or indecisiveness, although she acknowledges that there are mild problems there.

Rochelle lives with her husband.   She follows a regular sleep pattern and continues with some of the daily activities, although she does not shop.   She still drives and does the cooking at home.   She indicates that she enjoys cooking and she is currently helping out with her Hawaiian club, cooking for the paddlers.   Once or twice a month, she will help out watching her father-in-law, to give her sister-in-law a break, as her father-in-law is very elderly and needs monitoring.   Rochelle goes to church every Sunday and at least once every other week, she will volunteer, helping out the disabled or being involved in other church activities.   She also enjoys reading, which she usually does after she watches her morning television shows. She reads the newspaper every day, reads the bible, and will get books from the library.

AR 383-85.

Dr. Donovan made the following findings:

1.   Rochelle indicates she cannot handle her own financial affairs.   I suspect this has more to do with stress in the home than anything else.   In addition to the academic and intelligence testing, I also gave Rochelle a paragraph memory test from the Memory Assessment Scales. While her performance here fell at the bottom of the Low-Average range, this score is not so weak as to indicate cognitive problems.   Further, her reading comprehension score was fairly intact and while there may be some age-related cognitive loss, I think the larger problem is more emotionally-based.

2.   I think Rochelle can understand simple oral instructions.

3.    I think Rochelle could maintain normal pace, persistence, and concentration in a workplace, in a low-stress environment, in which she feels comfortable.   In such an environment, I think she could handle the stress of low-stress employment and get along with others.

AR 387.

The ALJ recounted the following issues with respect to mental impairment and summarized Dr. Donovan's findings:

At the hearing, the claimant said she has memory problems including panic attacks if she misplaces her keys or purse, but she stated that she has felt these for a while, when she was working, and even before she suffered the stroke.   There is little evidence of mental health treatment in the record.   During a physical exam in May 2011, the claimant was alert and oriented, with no signs of depression or anxiety.

Given the lack of evidence relative to a mental impairment, the claimant was sent for an exam with consulting examiner Dennis Donovan, Ph.D. in August 2012.   Dr. Donovan noted that claimant was appropriately dressed and groomed, had adequate energy and concentration, was pleasant and polite but slightly anxious, and had a slightly restricted affect.   Testing showed a full scale IQ of 83 in the low average range of intelligence, low average memory and intact reading comprehension.   Dr. Donovan diagnosed dysthymia and opined that the claimant could complete simple tasks and maintain normal pace, persistence and concentration in low stress environments.

AR 28.

31

Contrary to Kawelo's contention, the ALJ did not "reject" Dr. Donovan's opinion.   The ALJ did give it "limited weight" and explained her reasons for doing so:

> I give Dr. Donovan's opinion limited weight.   His assessment is based in large part on the claimant's subjective reporting which is not entirely supported by the record.   For example, the claimant told Dr. Donovan she could not balance her checkbook at home or handle her financial affairs, but she failed to tell him that she had been managing the books for her husband's business.   Further, her breadth of daily activity and lack of mental health treatment demonstrate that the claimant's mental impairment is nonsevere.

AR 28.

The Court finds that the ALJ properly provided specific and legitimate reasons, supported by substantial evidence in the record, in affording appropriate weight to Dr. Donovan's opinions.   First, the ALJ reasonably determined that Dr. Donovan's opinion was inconsistent with Kawelo's reported daily activities, which included assisting her husband with his business, attending to personal care, cooking, cleaning, shopping for groceries, driving, and active involvement in her church and Hawaiian civic club.   *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ did not err by rejecting a doctor's recommendations as being implausible and inconsistent with the claimant's testimony about her daily activities); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (concluding that

32

claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition).   The ALJ was permitted to consider Kawelo's reports of her daily living activities and her limited history of mental health treatment.   *See Curry*, 925 F.2d at 1130.

Second, the ALJ reasonably found that Dr. Donovan's opinions were inconsistent with other clinical findings.   *See* AR 28 (citing Exs. 1F, 9F and 4A); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (permitting the rejection of a medical opinion that is inconsistent with clinical findings).   The ALJ also noted that no treating source identified severe mental limitations or a notable history of mental health treatment.   AR 27-29; *see also* AR 384, 760-65, 789-90.

Third, the ALJ reasonably gave more weight to the contradictory opinion of Dr. Brode, the non-examining agency consultant, whose conclusions were consistent with other independent evidence in the record.   *See* AR 28.   Brode reviewed Kawelo's file and affirmed the prior determination that her psychological impairments were nonsevere.   *See* AR 85-88; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other

independent evidence in the record).   Kawelo points to no error or inconsistency underlying Dr. Brode's opinion.

Finally, to the extent Kawelo argues that her Global Assessment Functioning ("GAF") score supports Dr. Donovan's finding of moderate mental limitations, *see* AR 386, the Commissioner notes that the agency has declined to endorse the GAF score in the Social Security and SSI disability programs.   *See McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008) ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.' 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000). . . .   [T]he ALJ's failure to address the three GAF scores specifically does not constitute legal error."); *Schmidt v. Colvin*, 2013 WL 5372845, at *11 (E.D. Cal. Sept. 25, 2013) (Noting the agency's position that "[t]he GAF scale, which is . . . endorsed by the American Psychiatric Association[,] does not have a direct correlation to the severity requirements in our mental disorders listings.") (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746-01 (Aug. 21, 2000)).   The Court finds no error in the ALJ affording limited weight to Dr. Donovan's opinion notwithstanding Kawelo's GAF score.

34

In sum, the ALJ provided specific, clear and convincing reasons for discounting Kawelo's testimony regarding the intensity, persistence and limiting effects of her symptoms, and did not err in affording "limited weight" to Dr. Donovan's opinions.   *See Chaudhry v. Astrue*, 688 F.3d 661, 670-671 (9th Cir. 2012) (holding that the ALJ properly relied on medical evidence undermining claimant's subjective assessment of limitations).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's final decision applied the correct legal standards, was supported by substantial evidence, and is in accordance with the law.   Accordingly, the Court affirms the ALJ's January 23, 2014 decision.   The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: July 25, 2016 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

Kawelo v. Colvin; CV 15-223 DKW-KSC; **ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**